UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

RAFAEL SOTO,

                              Plaintiff,

           -against-

THE CITY OF NEW YORK, COUNTY OF KINGS,
DISTRICT ATTORNEY CHARLES J. HYNES,
DETECTIVE DANIEL BONILLA, POLICE OFFICER
ADAM FEDER, ASSISTANT DISTRICT ATTORNEY
JOHN GIANNOTTI, ASSISTANT DISTRICT
ATTORNEY LINDSAY GERDES, LIEUTENANT
CHRISTOPHE MARROW, and DETECTIVE BRIAN
MEICHSNER,

                              Defendants.

------------------------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

12 CV 4241 (MKB) (VVP)

**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

1.     This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.     Plaintiff demands a trial by jury in this action.

## **PARTIES**

6.      Plaintiff Rafael Soto ("Plaintiff" or "Mr. Soto"), a Hispanic-American male, is a resident of Union County in the City of Rahway, State of New Jersey.

7.      Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8.      Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9.      The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.      At all times relevant herein, Defendant Detective Daniel Bonilla ("Bonilla") was an officer, employee, and agent of Defendant The City of New York.

11.      At all times relevant herein, Defendant Bonilla was acting within the scope of his employment with Defendant The City of New York.

12.      At all times relevant herein, Defendant Bonilla was acting under color of state law.

13.      Defendant Bonilla is sued in his individual and official capacities.

14.      At all times relevant herein, Defendant Police Officer Adam Feder ("Feder") was an officer, employee, and agent of Defendant The City of New York.

15.      At all times relevant herein, Defendant Feder was acting within the scope of his employment with Defendant The City of New York.

16.      At all times relevant herein, Defendant Feder was acting under color of state law.

17.     Defendant Feder is sued in his individual and official capacities.

18.     At all times relevant herein, Defendant Lieutenant Christophe Marrow ("Marrow") was a supervisor, officer, employee, and agent of Defendant The City of New York.

19.     At all times relevant herein, Defendant Marrow was acting within the scope of his employment with Defendant The City of New York.

20.     At all times relevant herein, Defendant Marrow was acting under color of state law.

21.     Defendant Marrow is sued in his individual and official capacities.

22.     At all times relevant herein, Defendant Detective Brian Meichsner ("Meichsner") was an officer, employee, and agent of Defendant The City of New York.

23.     At all times relevant herein, Defendant Meichsner was acting within the scope of his employment with Defendant The City of New York.

24.     At all times relevant herein, Defendant Meichsner was acting under color of state law.

25.     Defendant Meichsner is sued in his individual and official capacities.

26.     Defendant County of Kings is a county organized under the laws of the State of New York.

27.     By and through Defendant District Attorney Charles J. Hynes ("Hynes"), Defendant County of Kings operates the Kings County District Attorney's Office ("KCDAO"), a department, office, or agency of Defendant County of Kings.

28.     The KCDAO is responsible for the appointment, training, supervision, promotion, and discipline of KCDAO assistant district attorneys and employees.

29.     Defendant The City of New York also operates the KCDAO and pays the salaries of those persons employed with the KCDAO.

30.     At all times relevant herein, Defendant Hynes was acting within the scope of his office with Defendant County of Kings and the KCDAO.

31.     At all times relevant herein, Defendant Hynes was acting under color of state law.

32.     Defendant Hynes is sued in his individual and official capacities.

33.     At all times relevant herein, Defendant Assistant District Attorney John Giannotti ("Giannotti") was an attorney, employee, and agent of and with the KCDAO, Defendant Hynes, and Defendant County of Kings.

34.     At all times relevant herein, Defendant Giannotti was acting within the scope of his employment with the KCDAO, Defendant Hynes, and Defendant County of Kings.

35.     At all times relevant herein, Defendant Giannotti was acting under color of state law.

36.     Defendant Giannotti is sued in his individual and official capacities.

37.     At all times relevant herein, Defendant Assistant District Attorney Lindsay Gerdes ("Gerdes") was an attorney, employee, and agent of and with the KCDAO, Defendant Hynes, and Defendant County of Kings.

38.     At all times relevant herein, Defendant Gerdes was acting within the scope of his employment with the KCDAO, Defendant Hynes, and Defendant County of Kings.

39.     At all times relevant herein, Defendant Gerdes was acting under color of state law.

40.     Defendant Gerdes is sued in his individual and official capacities.

## STATEMENT OF FACTS

41.     On or about November 7, 2011, Mr. Soto was lured to the 76th Precinct in Kings County by Defendant Detective Daniel Bonilla.

42.     Once at the 76th Precinct, Mr. Soto was falsely arrested by Defendants Bonilla, Feder, and Marrow on charges under New York Penal Law §§ 135.20, 140.30(2), 140.30(3), 160.15(3),  110/120.10(1),  140.25(1)(d),  140.25(2),  160.10(1),  160.10(2)(a),  160.10(2)(b), 160.10(3), 120.05(2), 105.10(1), and 135.10.

43.     Defendants Bonilla, Feder, Meichsner, and Marrow did not have probable cause to effect Mr. Soto's arrest and failed to read Mr. Soto his Miranda rights.

44.     Prior to and after Mr. Soto's arrest, Defendants Bonilla, Feder, Marrow, and Meichsner fabricated evidence against Mr. Soto.

45.     Prior to and after Mr. Soto's arrest, Defendants Hynes, Giannotti, and Gerdes, acting in an investigative capacity, fabricated evidence against Mr. Soto.

46.     Upon information and belief, the individual defendants acted in concert, conspiring with each other to violate Mr. Soto's constitutional rights by jointly fabricating evidence against him; by coordinating their related actions against Mr. Soto; by conspiring to arrest Mr. Soto; and by jointly deciding, preparing, and presenting fabricated evidence against Mr. Soto.

47.     Mr. Soto's arrest was ordered by Defendants Hynes, Giannotti, Gerdes, and Marrow.

48.     Mr. Soto's arrest was approved by Defendants Hynes, Giannotti, Gerdes, and Marrow.

49.     Based on the fabricated evidence, the KCDAO forwarded to Defendant Bonilla a Criminal Court Complaint.

50.     Defendants Hynes, Giannotti, and Gerdes knew the allegations contained in the Criminal Court Complaint to be false.

51.     The Criminal Court Complaint was reviewed and then signed by Defendant Bonilla.

52.     When reviewing and signing the Criminal Court Complaint, Defendant Bonilla knew the allegations contained therein to be false.

53.     The executed Criminal Court Complaint was then forwarded by Defendant Bonilla to the KCDAO.

54.     Legal process was issued against Mr. Soto, and Mr. Soto was subsequently arraigned.

55.     During the pendency of the criminal proceeding, Defendants Bonilla, Feder, Marrow, and Meichsner forwarded false evidence to the Kings County District Attorney's Office, *inter alia*, arrest reports, complaint reports, and property vouchers.

56.     At the Grand Jury hearing, Defendants Bonilla, Feder, Marrow, and Meichsner gave false testimony, *inter alia*, alleging that Mr. Soto had violated New York Penal Law §§ 135.25(1), 140.30(2), 160.15(1), 105.15, & 120.05(1).

57.     Defendants Giannotti and Gerdes, in seeking to ensure that the grand jury would indict Mr. Soto, and outside their duties as a prosecutors, deliberated with the grand jury and caused the grand jury to return an indictment against Mr. Soto.

58.     By Order of the Honorable Justice Ruth Shillingford, dated February 28, 2012, the indictment against Mr. Soto was dismissed.

59.     The charges against Mr. Soto were terminated in his favor, but not before, *inter alia*, Mr Soto's right to a fair trial was violated.

60.     As a result of Defendants' actions, Mr. Soto, *inter alia*, was incarcerated for approximately five days, lost inventory from his business, lost business accounts, lost the sale of his bread route, was strip searched, and caused to hire a criminal defense attorney at his own expense.

61.     Upon information and belief, Defendant District Attorney Charles J. Hynes was aware of and approved of the actions of the employees of the KCDOA, including those actions taken by Defendants Giannotti and Gerdes.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983*

62.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

63.     Defendants, by their conduct toward Mr. Soto as alleged herein, violated Mr. Soto's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

64.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

## SECOND CAUSE OF ACTION

*Unlawful Stop and Search*

65.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

66.     The individual defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Soto without reasonable suspicion.

67.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
### *False Arrest*

68.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

69.     The individual defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Soto without probable cause.

70.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
### *Denial of Substantive Due Process*

71.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

72.     The individual defendants created false evidence against Mr. Soto.

73.     The individual defendants were either employees of the KCDAO or forwarded false evidence to prosecutors in the Kings County District Attorney's Office.

74.     In creating false evidence against Mr. Soto, and/or in forwarding false evidence to prosecutors, the individual defendants violated Mr. Soto's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States, as well as Mr. Soto's right to a fair trial.

75.     In deliberating with the grand jury, Defendants Giannotti and Gerdes violated Mr. Soto's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

76.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
### *Malicious Abuse of Process*

77.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

78.     The individual defendants issued and/or caused to be issued legal process to place Mr. Soto under arrest.

79.     The individual defendants arrested Mr. Soto in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of him, to obtain more convictions, and to obtain higher arrest rates for major crimes.

80.     The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, creating and/or forwarding false evidence to the Kings County District Attorney's Office and continuing to participate in the prosecution of Mr. Soto.

81.     The individual defendants acted with intent to do harm to Mr. Soto without excuse or justification.

82.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

**SIXTH CAUSE OF ACTION**
*Malicious Prosecution*

83.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

84.     The individual defendants initiated the criminal proceedings against Mr. Soto by issuing and/or causing to be issued legal process against Mr. Soto.

85.     The individual defendants lacked probable cause to commence the criminal proceedings against Mr. Soto.

86.     The individual defendants' actions were motivated by actual malice.

87.     The criminal proceeding was terminated in Mr. Soto's favor.

88.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

**SEVENTH CAUSE OF ACTION**
*Failure to Intervene*

89.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

90.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

91.     Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

92.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

## EIGHTH CAUSE OF ACTION
### *Conspiracy under 42 U.S.C. § 1983*

93.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

94.     The Defendants and members of the Kings County District Attorney's Office jointly participated in the deprivation of Mr. Soto's constitutional rights as set forth herein.

95.     The Defendants conspired in the deprivation of Mr. Soto's constitutional rights by collectively lying about Mr. Soto's actions and conduct; intentionally withholding and/or destroying exculpatory evidence in order to support the Defendants' fabricated version of the events; and manipulating the grand jury into returning an indictment against Mr. Soto.

96.     As a result of the Defendants' malicious efforts to damage Mr. Soto, Mr. Soto's liberty was restricted, and Mr. Soto was restrained, subjected to handcuffing, and, among other things, falsely arrested, strip searched, and prosecuted.

97.     As a direct and proximate result of this unlawful conduct, Mr. Soto sustained the damages herein alleged.

## NINTH CAUSE OF ACTION
### *Equal Protection Clause under 42 U.S.C. § 1983*

98.     Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

99.     The Defendants' conduct was tantamount to discrimination against Mr. Soto based on his ethnicity.  This disparate treatment caused Mr. Gearles to suffer serious injuries.

100. The NYPD discriminatory program is pervasive and evident throughout many of its practices, including those used to stop, question, and arrest Mr. Soto.

101. The NYPD has maintained, *inter alia*, illegal stop and question practices, as part of a systematic discriminatory program aimed towards minorities. The searches occur nearly every day without the requisite level of suspicion, and are so customary as to constitute official municipal policy.

102. One such program is the Clean Halls Buildings program, which initially created to combat illegal activity in apartment buildings. Many buildings are enrolled and remain in the program without regard to whether there is sustained or substantial crime. Thus, residents and their unsuspecting guests are left subject to the unscrupulous stop, question, search, citation, and arrest practices of local NYPD officers.

103. The impact on Blacks and Latinos as compared to Whites is disparaging and significant. From 2006 to 2010, approximately 94.4% of those stopped and questioned for trespassing were Black and Latino, although they only accounted for 52% of the New York City population. Blacks and Latinos were 6 times more likely to be stopped by police than Whites, Asians, and Native Americans combined.

104. The NYPD has also maintained illegal stop and frisk policies, as part of a systematic discriminatory program aimed towards minorities.

105. The New York State Attorney General's 1999 inquiry into the NYPD's stop and frisk program found that between the 175,000 "UF-250" stop and frisk forms filed by officers indicated consistent and significant racial skewing.

106.    According to the report, Blacks comprised 25.6% of the City's population, yet 50.6% of all persons stopped were Black.  Hispanics comprised 23.7% of the City's population yet, 33.0% of all stops were of Hispanics.  By contrast, Whites made up 43.4% of the City's population, but accounted for only 12.9% of all stops.  The disparities were further pronounced in precincts where the majority of the population was White. Where Blacks and Hispanics each represent less than 10% of the population, Blacks and Hispanics accounted for more than 50% of stops during any given period. The New York State Attorney General's finding was that 8 out of 9 searches did not uncover contraband.

107.    Under the NYPD's policy, if a person is stopped and questioned without official use of force (or with consent) and gives his or her name, documentation is not required. Consequently, NYPD officers frequently do not to file the proper UF-250 form to record stop and frisk searches.

108.    Many experts believe the numbers available from NYPD offices do not accurately reflect the discrimination of the NYPD's stop and frisk program. In one independent street interview conducted with 100 Black and Hispanic males between the ages of 14 and 35, 81 participants reported having been stopped, patted down and questioned, without being arrested.

109.    The NYPD arrests more Blacks, Hispanics, and other minorities as compared to Whites in furtherance of its systematic discriminatory program.

110.    The NYPD frequently uses marijuana arrest cases to bolster both its productivity and arrest reports.  Marijuana possession is an infraction payable by fine in New York City, yet from 1997 to 2006, 52% Blacks, 31% Hispanics were arrested for possession of marijuana, as compared to 15% of Whites.

111.    Despite the overwhelming evidence from U.S. government surveys that have consistently shown young Whites between the ages of 18 and 25 using marijuana at higher rates than either young Hispanics and Blacks, in 2006, the marijuana arrest rate of Blacks was five times that of Whites.  The arrest rate of Hispanics in 2006 was nearly three times that of Whites.

112.    Arrest records consistently show that where minorities represent a small portion of the population, they also represent the majority of arrestees (with the exception of Staten Island).  In Staten Island, Blacks were about 10% of the population, but were 37% of marijuana arrestees.  In Manhattan, Blacks were about 17% of the population, but accounted for 43% of marijuana arrestees.  In Queens, Blacks were about 20% of the population, but accounted for 57% of marijuana arrestees.  In Brooklyn, Blacks were about 36% of the population, but were an overwhelming 65% of marijuana arrestees.  Finally, in the Bronx, Blacks were 36% of the population, but accounted for 48% of marijuana arrestees.  The White population and the White percentage of marijuana arrestees in each borough were equally skewed, but in the opposite direction.

113.    Trespassing and marijuana arrests are the most effective means available for obtaining fingerprints, photographs, and DNA samples (since 2006) from people never before entered in the criminal justice databases.  Where those trespassing and marijuana stops result in the issuance of a fine rather than arrest, the outcome is often still detrimental.  Often times, young persons in the housing projects (such as those enrolled in the Clean Halls Buildings program) or other poor neighborhoods do not have the means to pay the fines, and a criminal courts will issue a warrant for their arrest.  Many times, the subsequent occasion on which that

person is stopped, questioned, frisked, or searched by the NYPD, the outstanding warrant will ultimately serve as a basis for arrest.

114.    As a result of the foregoing, Mr. Gearles was deprived of rights under the Equal Protection Clause of the Constitution of the United States, and are thereby entitled to damages.

## TENTH CAUSE OF ACTION
### *Monell*

115.    Mr. Soto repeats and realleges each and every allegation as if fully set forth herein.

116.    This is not an isolated incident.  Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Soto.

117.    Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

118.    Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

119.    This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

120.    Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

121.     Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

122.     Active officers are given promotion opportunities that are not afforded to inactive officers.

123.     Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

124.     The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

125.     Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk appearance tickets lawfully.  There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

126.     Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

127.     The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

128.    Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

129.    Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

130.    Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

131.    These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

132.    Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

133.    As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

134.    Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

135.    Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

136.    Defendants The City of New York, Hynes, and County of Kings, through the KCDAO, have *de facto* employee and attorney promotion policies that encourage negligent investigations; the fabrication of evidence; perjury; and improper manipulation of grand juries, including marshalling evidence to the point of deliberation with the grand jury.

137.    The KCDAO's employee and attorney promotion policies give opportunities to those employees and/or attorneys who have higher rates of indictment and/or convictions, regardless of whether those indictments or convictions are later overturned.

138.    The KCDAO does very little, if anything, to ensure that its employees and attorneys, in seeking convictions and indictments, are not engaging in illegal and unconstitutional conduct.

139.    Defendants The City of New York, District Attorney Charles J. Hynes, and County of Kings, through the KCDAO, have had, and still have, hiring practices that they know will lead to the hiring of employees and attorneys lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

140.    Defendants The City of New York, District Attorney Charles J. Hynes, and County of Kings, through the KCDAO, have *de facto* policies that encourage competition among employees and attorneys.  These policies encourage negligent investigations; the fabrication of evidence; perjury; and improper manipulation of grand juries, including marshalling evidence to the point of deliberation with the grand jury.

141.    Defendants The City of New York, County of Kings, and District Attorney Charles J. Hynes, at all relevant times, were aware that the individual defendants routinely

committed constitutional violations such as those at issue here and have failed to change their policies, practices, and customs to stop this behavior.

142.    Defendants The City of New York, County of Kings, and District Attorney Charles J. Hynes, at all relevant times, were aware that the individual defendants are unfit officers, attorneys, and employees who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

143.    These policies, practices, and customs were the moving force behind Mr. Soto's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Soto respectfully requests judgment against Defendants as follows:

(a)    Compensatory damages against all defendants, jointly and severally;

(b)    Punitive damages against the individual defendants, jointly and severally;

(c)    Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       July 27, 2013

                                        /s/
                                        Gregory P. Mouton, Jr., Esq.
                                        The Law Office of Gregory P. Mouton, Jr.
                                        Attorney for Plaintiff
                                        244 5th Avenue, Suite G247
                                        New York, NY
                                        Phone & Fax: (646) 706-7481
                                        greg@moutonlawnyc.com