TT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: PART 10
-----------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                                                                       DECISION AND ORDER
            -against-                              INDICTMENT NO: 9517/11

RAFAEL SOTO,

                Defendant.
-----------------------------------------------------------------X

Ruth Shillingford, J.:

      Defendant is charged, *inter alia*, with Kidnapping in the Second Degree and multiple counts of Robbery in the Second Degree and Burglary in the First Degree. The People's theory is that after unsuccessful negotiations between defendant, the owner of a bread route, and the complainant, the owner of a bakery, to purchase said route, defendant, acting in concert with his sole employee, Jonathan Mena, and one Pablo Dickinson, masterminded the kidnapping of the complainant at about 4:30 in the early morning of October 20, 2011, in an effort to steal $100,000.00 from a safe at the complainant's home. Mena is alleged to have been the driver of the van from which the complainant was rescued by the police, while Dickinson was in the passenger seat. Both face similar charges under Indictment No. 08690/11.

      Defendant testified before the grand jury, claiming that at the time of the incident, he was at home with his family. He also portrayed himself as someone who had no financial reason to be involved in this incident, particularly given the pending sale of his route to another buyer, and as an unwavering but perhaps misguided friend of Mena. Upon this court's review of the grand jury minutes, it concludes that this is one of the exceptional cases where the grand jury proceeding was defective pursuant to CPL 210.35

(5) to warrant dismissal of the indictment.

On November 10, 2011, the People presented evidence to the grand jury, including the testimony of the complainant. Defendant then testified as noted above. One of the links between defendant and the driver concerned a series of text messages between the men in the late afternoon and evening hours preceding the early morning hour kidnapping of the complainant. In questioning defendant, the prosecutor elicited from him that the driver referred to him as "Blessed". Defendant testified that he did not remember having received a message at 4:12 pm on October 19, 20011 from Mena which was addressed to "B Blessed". The People nonetheless read into the record the exhibit, which stated, "[n]o bro, I'm at home. I'm just waiting on ya for the other thing. All the bread shit, we can cover tomorrow, man." The prosecutor then proceeded to question defendant about it. Defendant subsequently acknowledged receiving other texts and provided his version of their meaning. In that regard, he contended that the text he received at 8:44 p.m. which stated, in Spanish, as interpreted by the interpreter, "[p]artner, I already have a dude that can travel over there with me. I told him that I can only give him 10 because I was only going to get 20" (Exhibit 14/15), was really about another driver whom Mena was training for the route.

Upon the completion of defendant's testimony, the People charged the grand jury on one count, namely, Robbery in the First Degree. After the grand jury vote a no true bill on this count, the prosecutor advised that they should cease any further deliberations since she would be returning on this case.

On November 28, 2011, the People presented additional evidence to the grand jury and charged on the various counts noted above. The grand jury then indicated that

they were deadlocked. Upon questioning by the prosecutor as to whether they needed additional evidence, the foreperson confirmed as much; one juror asked if "we could marshal the evidence" and when asked if s/he meant "among yourselves, or do you need me to marshal", s/he indicated "we need to get more." There were questions raised regarding "acting in concert" and "physical presence." It is the ensuing colloquy by the prosecutor, which went beyond the mere marshalling of evidence and instructing on the charges, which leads the court to conclude that the grand jury proceeding was impaired with a potential of prejudice to defendant.

"CPL 210.35(5) provides that a Grand Jury proceeding is defective when 'the integrity thereof is impaired and prejudice to the defendant may result.' The exceptional remedy of dismissal is thus warranted only where a defect in the indictment created a possibility of prejudice ...Although this statutory test 'is very precise and very high' ... it does not require actual prejudice" (*People v. Huston*, 88 NY2d 400, 409 [1996])(internal citations omitted). And while this Court is certainly *not* suggesting that the prosecutor's action in this case is as egregious as that of the one in *Huston, supra*, it does conclude that dismissal is warranted.

Thus, a review of the minutes reveals that the prosecutor's response to the grand jury's questions resulted in extensive marshalling of the evidence to the point of deliberation in the process (*see* 2/28/11 Transcript: 14-17; 21-23); the "highlighting" of portions of the acting in concert instruction interlaced with segments of testimony deemed supportive of the People's position (T: 17-19); some innacuracies regarding defendant's testimony about the texts (T: 14 & 15); and emphasizing the prosecutor's "confrontation" of defendant with respect to some of the texts in question (T: 15), his

employment with FedEx (T: 21-22) and his purchase of the zip ties reflected in the receipt (T: 22-23). To be sure, the prosecutor did remind the grand jury that it was their recollection that controlled if it differed from hers. The grand jury then voted a true bill on all the charges.

Given the grand jury's no true bill on the first degree robbery charge after having heard defendant's testimony, and their continued inability to vote a true bill even after the People presented extensive additional evidence to rebut defendant's testimony, it cannot be said that the defect in the proceedings did not create a possiblility of prejudice to defendant. Accordingly, where as here, impairment of the grand jury with the attendant possibility of prejudice to defendant is established, dismissal is warranted even if the People have established a legally sufficient case (*People v. Shammas*, 5 Misc3d 702 [Crim. Ct. Kings Co. 2004]).

Finally, the court notes that at the next presentation of the case to another grand jury, the People should be mindful of laying the proper foundation regarding the admissibility of any text messages (*see generally, People v. Pierre*, 41 AD3d 289, 291 [1st Dept. 2007]), as well as the basis for a witness' conclusion regarding the private or public status of a corporate entity. Defendant is also reminded, should he choose to testify at the next proceeding, that he is to limit his testimony or other evidence to issues relevant to the charges in question (*People v. Reome*, 309 AD2d 1067 [3d Dept. 2006]). Finally and contrary to defendant's claim, where, as here, the People advised the panel that they intended to present additional evidence, they acted appropriately in doing so without first obtaining leave of the court (*People v. McIntosh*, 17 NY3d 633, 639 [2011]).

## CONCLUSION

Based on the foregoing, the indictment is dismissed, with leave for the People to re-present before another grand jury.

This constitutes the Decision and Order of the court.

Dated: Brooklyn, New York

February 28, 2012

Ruth Shillingford, A.J.S.C.